Freeman, J.,
delivered the opinion of the court.
This is an action of debt, and presents the single question of the constitutionality of the Act of the Legislature of the 26th' of January, 1861, providing *94 for a stay of all judgments and decrees had in any of the courts of record in this State, and before justices •of the peace. The section of the act necessary to be ■quoted is as follows:
“Be it enacted, <frc.,That from and after the passage •of this act all judgments and decrees which shall be rendered in any of the courts of this State, or which .shall be rendered by justices of the peace of this State, for money, shall be stayed by such courts and justices for the period of twelve months from the rendition of such decree or judgment; provided, that the defendant or defendants in said judgment or decree shall appear before said courts of record during the term of said courts, or within two days after the rendition of the judgment before justices of the peace, •and give good and ample security for the stay of ex■ecution, to be approved of by said courts or justices: which stay shall operate as a judgment against the security of said courts or before said justices.”
The question is, does this act impair the obligation of contracts made before its passage, and can such stay be given in cases of judgments or decrees rendered on such contracts?
We would, if possible, avoid the discussion of this •question, which has been exhausted by the exposition of Marshall and a host of other judicial minds in this •country, and upon which we feel we can throw no additional light by anything which we may say in this * opinion. But it happens to be the only question presented in ■ the case before us, and our predecessors have held opinions and made decisions, as we know, the *95 one precisely'the opposite of the other, upon the very statute under consideration. We allude to the decision made by the Supreme Court at Jaekson, in April 1861, opinion by Judge McKinney, which is not reported, and the decision made by our immediate predecessors, September Term, 1865, opinion by Maynard, Special Judge, in the ease of Farnsworth & Reeves v. Vance & Fleming, reported in 2 Col., 108. In the first opinion, after thorough argument of the question, the statute was held to be unconstitutional and void; and in the last it is held to be constitutional and the law of the land. Which view of the question shall we follow and adopt as correct, is what we are called upon to say by the case now before us.
The familiar clause of the Constitution of the United States under which this question arises, is s. 10 — or part of that section — art. i., and is as follows: “ No State shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts,” and our State Constitution, art. i., s. 20, is: “ That no retrospective law, or law impairing the obligation of contracts, shall be. made.”
In the language of Chief Justice Marshall, in the case of Sturgis v. Crowninshield, 4 Wheat, 197: “ It would seeqa difficult to substitute words which are more intelligible, and less liable to misconstruction, than those which are to be explained.” Yet there has not only been great diversity of judicial opinion as to the proper construction of this simple clause of the Constitution as to what it means, but still more as to its precise application. We will *96 not, however, examine, or attempt to criticise, much less to analyze and evolve the true principle out of the vast number of cases in both State and Federal Courts, that have reviewed this question. We only present what we hold to be the sounder principle, with a few of the reasons in favor of that view. What then constitutes the obligation of a contract, in a legal sense, is the point on which the whole question turns. Whatever that is, can not be impaired — is in plain language forbidden. We 'assume, first, that there are in every contract for payment of money — as this one is — two elements of obligation that are distinct and clearly separable; the one the moral obligation to perform what is promised; the other the legal obligation which grows out of such promise, and results from it when made. The first is an obligation growing out of the general duty of truthfulness and good faith in all our conduct, founded upon that which, perhaps more than all else, is the distinguishing feature between man and all other intelligent animated creatures — the possession of a moral nature or constitution; a principle, as part of his nature, which is made to respond to the demand or idea represented by the words, “I ought;” that principle in the constitution of his nature which imposes upon him a moral compulsion, or moral obligement — to use a word that expresses the idea more clearly — to do that which he has promised, or to do any other act which is included in that broad term — duty, and which is the only principle out of which that obligation can grov, or on which it can be based. This obligation is one *97 not enforceable in courts of law, but alone in the forum of conscience. Its binding force can neither be created, nor enlarged, nor modified, by laws passed by a legislature, or any other power in a State; nor can it be released or broken, though it may be violated. It must remain eternally the same in its original and essential force. The framers of the Constisution did not intend to prohibit the States in this direction, or add additional strength to this element of the obligation, by protecting it from laws that might weaken its force. It must be the other element of obligation that is the legal compulsion or obligement, that grows out of a contract and makes a part of it, enters into it at the time it is made, that is intended to be protected and maintained in its full force and vigor by this language.
This is made certain by another view of the question, that the prohibition is against any State passing any law impairing the obligation of contracts. It is the action of law-making bodies that is thus restrained, and that of States. The law-making bodies of States, or law-enacting bodies, are the people in convention, or in legislative assemblies, and it is these bodies that are prohibited in the exercise of their functions to pass or enact laws, the one in the form of constitutional provisions, the other in the form of statutes, or legislative enactments in the direction forbidden. It would seem clear then, that the prohibition being upon legislative or law-making bodies, that it should be referred to that which, without the prohibition, they were competent to do, and was within *98 their legitimate sphere of action, that is, the impairing by law of an obligation created or imposed by law; or in other words, to effect injuriously the legal obligation or legal compulsion or obligement that makes a part of every contract.
This we' think the principle that underlies the reasonings of the Supreme Court of the United States in the great leading cases on this subject of Sturgis v. Crowninshield, 4 Wheat, and of Ogden v. Saunders, 12 Wheat, 132; for in the first case Chief Justice Marshall, in delivering the opinion of the court, says, p. 197: “A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract.” That is, we add, it is the legal obligation with which the law-making power and the courts have to deal. He adds: “Where a party has given his promissory note, by which he promises to pay a sum of money on a certain day, the contract binds him to pay that sum on that day, and this is its obligation. Any law which releases a part of this obligation must, in the literal sense of the word, impair it.” Here in this last sentence the learned Chief Justice (with deference be it said) seems to fail to distinguish between the moral and the legal obligation; for while the party is certainly morally bound to perform it on that day, and while the law equally recognizes the duty, it does not actually, by any of its machinery, oblige him to do so on that day, nor is there any legal obligement or compulsion on him to do so, but *99 only the right to bring a suit and have judgment in the future, and an execution to enforce the performance by sale of property for that purpose.
We assume that the Convention had this principle and view of the case in their minds when they framed this clause; that they were thoroughly acquainted with our common law and knew its machinery for the enforcement of contracts, and meant that the legal obligation of contracts — that is, the legal • means of enforcing them, which constituted their legal obligation, or the legal obligement by which they were enforced — should not be impaired or weakened, or rendered less effective, than when the contract was entered into and the obligation imposed or taken upon the party; and such seems to be the basis of the reasoning of Judge Washington in delivering the majority opinion of the court in the case of Ogden v. Saunders, 12 Wheat, 259. He says: “ It is then the municipal law of the State, whether that be written or unwritten, which is emphatically the law of the contract made within the State, and must govern it throughout, whenever its performance is sought to be enforced. It forms, in my opinion, a part of the contract, and travels with it wherever the parties to it may be found.” Thompson, J., in his opinion says: “ As to what constitutes a contract no diversity of opinion exists. All the elementary writers on the subject, sanctioned by judicial decisions, consider it briefly and simply an agreement in which a competent party undertakes to do, or not to do, a particular thing; but all know that the agree *100 ment does not always, nay seldom, if ever, upon its face specify the full extent of the terms and conditions of the contract; many things are necessarily implied and to be governed by some rule not contained in the agreement, and this rule can be no other than the existing law when the contract is made or to be executed. Take for example,” he says “ the familiar case of an agreement to pay a certain sum of money with interest. The amount or rate of such interest is to be ascertained by some standard out of the agreement, and the law presumes the parties meant the common rate of interest established in the country where the contract was to be performed. This standard is not looked to for the purpose of removing any doubt or ambiguity arising on the contract itself^ but to ascertain the extent of its obligation or, suppose a law should declare generally; that all contracts for the payment of money should bear interest after the day of payment fixed in the contract, and a note, where such law was in force, should be made payable in a given number of days after date, such note would assuredly draw interest from the day it became payable, although the note on its face made no provision for interest, and the obligation of the contract to pay the interest would be as complete and binding as to pay the principal. But such would not be its operation without looking out of the instrument itself to the law which created the obligation to pay the interest. The same rule applies to contracts of every description.” In another part of the opinion he quotes from a case in 1 Wash *101 ington’s Circuit Court R., 341, as follows: “ Those laws which in any manner affect the contract, whether its construction, the mode of discharging it, or which control the obligation which the contract imposes, are essentially incorporated with the contract itself. The contract is a law which the parties impose upon themselves, subject however to the paramount law, the law of the country where the contract is made.”
We will not further follow this line of investigation through the various eases in the Supreme Court of the United States. They are familiar to the profession, and, we may add, they present such perfect models of judicial reasoning, both in clearness and lucidity of style, and exhaustive and wide-reaching comprehensiveness of view, combined with such wonderful acuteness and powers of analysis, as to present some of the most attractive reading to the legal student to be found in the English tongue.
We turn for a moment -to the decisions of our own courts, where the same views were at an early day adopted, and presented in an opinion of great ability in the case in Peck’s Reports of Townsend v. Townsend. The court in that case hold the principle -to be in substance: “That the Legislature may alter remedies, but they must not, so far as regards antecedent contracts, be rendered less effective or more dilatory than those ordained by the law in being when the contract was made, if such end be the direct and special object of the Legislature apparent in an act for the purpose.” Hence an act to suspend execution for two years, unless the plaintiff will en *102 dorse therein that he will receive bank paper in discharge of his judgment, was held to be void, as repugnant to the clause of the Constitution now under consideration. Such was the uniform holding of our courts, until the case of Farnsworth & Reeves v. Vance & Fleming. That casé goes on the principle, “that the Legislature may, in their discretion, vary the nature and extent of the remedy so that always some substantive remedy in fact be left:” 2 Col., 117; but leaves out the important qualification that it shall be equally efficacious as the one in existence at the time of making the contract.
We think perhaps the true principle is more properly stated thus: that the Legislature have complete control over the form of the remedy, the mode of proceeding by which the legal obligation is enforced; and in all that pertains to this may alter, change, or modify its laws as discretion may dictate. For instance, where the existent remedy at the time was debt, it may change it to assumpsit; or if assumpsit, may change it to debt; or, as in our Code, may give an action simply on the facts of the case; but then in no case can it by direct enactment for that purpose, nor even by indirection, where such is the purpose, render the remedy essentially less effective for enforcement of the obligation to which the party has bound himself by his agreement.
If the Legislature can enlarge the time one day in which the party, is to perform what the legal obligation of his contract requires at the time it is entered into, it may do it for ■ a hundred days; and if *103 for this period, then it may equally well do it for a hundred years. There can be no difference in principle in the one case from that of the other; and thus the legal obligation is not only impaired, but practically destroyed. Can this tremendous power be fairly held to lurk within the pinciple of legislative power over the remedy for enforcement of a contract? "We think not.
We will not critically, examine the opinion referred to in 2 Col., as it would be a useless consumption of time with no profit. The views on which it is based are well understood by the profession.
We can not approve the reasoning or conclusions of that case, and overrule it, adopting what we think was the uniform current of judicial opinion in Tennessee before that case as the sounder rule. See cases referred to by Mr. Cooper in note to Townsend v. Townsend, Peck’s R.
We have not attempted in this opinion a full discussion of the very interesting question before us, only desiring to present clearly the basis or some of the grounds on which we feel bo And to overrule the opinion re-r ferred to, that it may be seen that it is not done without a full consideration of the question. We have not felt called on to go into an elaborate argument to vindicate the views which we maintain in this opinion.
We affirm the judgment of his Honor the Circuit Judge, who held the law unconstitutional, and give judgment against the plaintiff and surety for his appeal for the costs of this Court.